# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
### April 18, 2013 Session

## JOHN R. CONDER, and wife, PAULA S. CONDER v. WILLIAM SALYERS, and wife, PAM SALYERS

### Direct Appeal from the Chancery Court for Benton County
### No. 1482      Ron E. Harmon, Chancellor

---

### No. W2012-00963-COA-R3-CV - Filed May 7, 2013

---

This appeal arises from a boundary line dispute. Appellees and Appellants both provided expert testimony and surveys from their respective surveyors. The trial court concluded that Appellees' surveyor's line was correct, and was not in conflict with the historic deeds. Accordingly, the court set the common boundary line between the parties's properties in compliance with Appellees' survey. In addition to the competing surveys, the court based its decision, in part, upon Tennessee Code Annotated Section 28-2-109, which creates a presumption of ownership in a party who has paid taxes on property for more than twenty years. Based upon tax records, the court determined that Appellees had paid the property taxes on the disputed property for the relevant statutory period. Appellants appeal. We conclude that the evidence does not preponderate against the trial court's determinations. Affirmed and remanded.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

James H. Bradberry, Dresden, Tennessee, for the appellants, William Salyers and Pam Salyers.

Phillip G. Hollis, Camden, Tennessee, for the appellees, John R. Conder and Paula S. Conder.

## OPINION

On April 16, 1981, John R. Conder and his wife, Paula S. Conder (together, the

"Conders," or "Appellees") purchased three acres of land from Harold Ashby and his wife, Jo Ann (together, the "Ashbys"). The sale was evidenced by a warranty deed, recorded in the Register's Office for Benton County, and made Exhibit 7 to the hearing in the trial court. On August 1, 1983, the Conders purchased an additional fifty-three acre tract of land from the Ashbys. This sale was also evidenced by a warranty deed, also recorded in the Register's Office for Benton County and made Exhibit 6 at the trial court hearing. The legal description for the deed to the fifty-three acre tract recites that it is taken from the land survey made by Aaron Edwards in July 1981 (the "Edwards Survey"). The Edwards Survey was admitted into evidence as Trial Exhibit 15. The legal description contained in the Edwards Survey makes reference to an adjoining owner, Smith, and calls for the Conder tract and the Smith tract to share a common boundary along a bearing of "North 60° 45' East 2645 feet to a point." This common line is part of the Conders's North boundary line and part of the South boundary line of S. Frank Smith and wife.

William Salyers and his wife, Pam (together, the "Salyers," or "Appellants") purchased the 175.34 acre Smith property by warranty deed dated October 10, 2003. The deed from the Smiths to the Saylers calls for the common boundary line with the Conders. Neither the Smiths, nor their devisees, ever disputed the boundary with the Conders.

Before the sale of the Smith tract to the Salyers, both the Smiths and the Conders each sold a part of their respective properties, lying along the common boundary, to Larry Bruce and his wife, Brenda. On November 5, 1993, the Smiths sold 4.76 acres to the Bruces. This sale was evidenced by a warranty deed, which was admitted into evidence as Trial Exhibit 10. The deed from the Smiths to the Bruces recognizes the boundary line at issue in this case as the same found in the Edwards Survey. On November 8, 1993, the Conders sold 1.30 acres to the Bruces by warranty deed, which was entered into the record as Trial Exhibit 9.

There was no controversy concerning the common boundary line until the Salyers purchased the Smith property. At that time, William Salyers hired Bryan J. Batte to survey the property that the Salyers had acquired. According to Mr. Batte's testimony, he went back to old deeds and legal descriptions of the property and tried to retrace where the original property lines should be. Mr. Batte arrived at an entirely new location for the boundary line between the Conders and Salyers (the "Batte Survey"). Relying on the Batte Survey, the Salyers erected a wire fence, which allegedly encroached and trespassed onto approximately 7.3 acres of the Conder land—this according to the calculations made by surveyor Robert G. Barrett, who testified at the hearing, *see infra*.

On September 29, 2006, the Conders filed suit against the Salyers for trespass, to quiet title, and to determine the common boundary line between the parties's properties. On October 11, 2006, the Benton County Chancery Court entered a temporary injunction to keep

the parties from altering the disputed property. On November 4, 2009, the Conders filed a motion for default judgment, alleging that the Salyers had failed to answer the complaint. In response, on November 17, 2009, the Salyers filed their answer, generally denying the material allegations made in the complaint.

A bench trial was held on September 22, 2011.[1] On March 8, 2012, the trial court entered a judgment in favor of the Conders upon its finding that the common boundary line between the parties's properties was the same as that set out in the Edwards Survey. The court also found that the Salyers had trespassed onto the Conders's property when the Salyers erected a fence. The court awarded the Conders $5,000 for the trespass and ordered the Salyers to remove the fence and any damage caused thereby. Finally, the court granted a permanent injunction, keeping the Salyers from any further trespass or encroachment upon the Conders's property. By order of this Court, an amended judgment, denying the Conders's request for punitive damages, was entered in the trial court on August 20, 2012.

The Salyers appeal, raising two issues for review as stated in their brief:

> 1. The evidence preponderates against the Chancellor's finding that the disputed North/South boundary between the Appellants and Appellees is governed by the survey of Aaron Edwards.
>
> 2. The Chancellor erred as a matter of law in applying Tennessee Code Annotated Section 28-2-109.

In the posture of Appellees, the Conders ask this Court to award them damages for a frivolous appeal.

This case was tried by the court without a jury. The general standard of review for bench trials applies to boundary disputes. *See Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980). Our review, therefore, is *de novo* upon the record of the proceedings below with a presumption of correctness as to the findings of fact of the trial court. *See* Tenn. R. App. P. 13(d); *Boarman v. Jaynes*, 109 S.W.3d 286, 289–90 (Tenn. 2003). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to *de novo* review with no presumption of correctness. *See Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

---

[1] We note that the attorney representing the Salyers in this appeal did not represent them at the trial level.

"In resolving a boundary line dispute, it is the role of the trier of fact to evaluate all the evidence and assess the credibility of the witnesses." *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999) (citing *Norman v. Hoyt*, 667 S.W.2d 88, 91 (Tenn. Ct. App. 1983)). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161 (Tenn. Ct. App. Mar. 31, 2008). Due to the fact-intensive nature of boundary line disputes, the trial court is best suited to assess the credibility of the witnesses and its credibility determinations are binding on this Court unless the evidence preponderates against them. *Id*. at *34. When the trial court makes a determination accepting one surveyor's findings over that of another, that same deference requires this court to accept the trial court's findings. *Id*.

As noted in the recent case of *Hong v. Foust,* No. E2011-00138-COA-R3-CV**,** 2012 WL 388448 (Tenn. Ct. App. Feb. 8, 2012), the following rule has been adopted in Tennessee:

> The construction of deed and other instruments and documents and their legal effect as to boundaries is a question of law. What boundaries the grant or deed refers to is a question of law; **where those boundaries are on the face of the earth is a question of fact**. If, therefore, the evidence concerning the location of the true boundary line between adjacent landowners is conflicting, that issue is one of fact unless the legal construction of the deed or grant is such that the boundary is determined as a matter of law.

*Id*. at *5 (citing 12 Am. Jur. 2d Boundaries § 121 (1997) (footnotes omitted)) (emphasis added). Therefore, we review the trial court's finding as to the true location of the parties's common boundary line as a finding of fact that is entitled to the presumption of correctness. Tenn. R. App. P. 13(d). Thus, we will not disturb the trial court's judgment unless the evidence preponderates against it. *Id*.

In its March 8, 2012 Judgment, the trial court made the following, relevant findings:

> The location of the new line determined by Batte did not identify any existing physical evidence on the ground and is not consistent with the common boundary recognized by Smith and Conder during the time they possessed their property nor in their deed to Larry and Brenda Bruce. The line calculated by Batte extended South onto the property of Conder by approximately 123 feet. William Salyers erected a new wire fence on this line

-4-

and encroached and trespassed on about 7.3 acres of the Conder land. . . .

The Court finds that the common boundary between plaintiffs Conder and defendant Saylers is the same line as recognized [and] accepted by Conder and Smith. This line is also the boundary found by Aaron Edwards in his 1981 survey . . . . The Court adopts the survey of Robert G. Barrett . . . dated May 5, 2004 and last revised on June 28, 2006, to show the fence erected as a result of Saylers' trespass. Mr. Barrett testified as an expert witness for plaintiff and the Court accepts his findings as correct . . . .

The Court then cites to the testimonies of Linda Armstrong, the Benton County Assessor of Property, and Sherry Beasley, the Benton County Trustee. Ms. Armstrong testified that the two Conder tracts (i.e., the three acre tract purchased from the Ashbys on April 16, 1981, and the fifty-three acre tract purchased from the Ashbys on August 1, 1983) had been combined into one tax parcel. She also testified that the Conders' boundary line had not changed since she began working at the Assessor's Office in July 1981. Ms. Beasley testified that the Conders had paid the property taxes on the combined property, identified as Tax Map 104, Parcel 17.04, for the last twenty years; Ms. Beasley provided tax receipts to support this testimony. The trial court's order notes that the Saylers "did not offer any evidence of payment of Benton County property taxes either as to their own property or as to any portion of the Conder property." Accordingly, the court found that:

[The Conders] had been in possession of the property shown as tax Map 104, Parcel 17.04 for a period in excess of twenty (20) years before the [Saylers] purchased the land identified as Tax Map 104, Parcel 14.00. [The Conders] are the fee simple owners of all the property identified on their tax parcels by both statute and common law of Tennessee.[2]

The [Saylers] made no claim and presented no evidence

---

[2] All of the tax maps referred to in this section were admitted into evidence as Trial Exhibits 1, 2, and 3. However, we are cognizant of the fact that tax maps are not drawn to show actual boundary lines. Therefore, such maps are not admissible for proving ownership of land. *Whitworth v. Hutchison*, 731 S.W2d 915, 917 (Tenn. Ct. App. 1986). Tax maps are only admissible to "determin[e] who paid taxes on a particular piece of real property." *Jack v. Dillchay*, 194 S.W.3d 441, 450 (Tenn. Ct. App. 2005).

at trial of any adverse possession of any portion of the Conder lands . . . .

After reviewing the record, we are unable to conclude that the evidence preponderates against the trial court's finding that the Conders own the disputed property. The trial court's determination relied in part on which of the two competing surveys it found to be the most reliable—the Edwards Survey or the Batte Survey. As noted above, when the trial court makes a determination accepting one surveyor's findings over that of another, this is a factual determination. As such, this Court gives deference to the trial court's determination unless the preponderance of the evidence is against that determination.

In support of their argument that the trial court erred in accepting the Edwards Survey (and the survey later prepared by Mr. Barrett ("the Barrett Survey"), which is ostensibly the same as the Edwards Survey), the Salyers argue that the evidence preponderates against the trial court's finding. Specifically, the Salyers argue that the Edwards Survey contains an "erroneous call and termination point." This error, they argue, "resulted in the inclusion of a triangular shaped piece of property [i.e., the disputed property] that should not have been in the conveyance to [the Conders]." The Salyers further argue that this triangular shaped parcel is "absent from the [Conders's] prior deeds."

We note at the outset that the Salyers's deed (i.e., from the Smiths to the Salyers) is not in this record. As discussed above, the only deeds found in the record are those from the Ashbys to the Conders, from the Conders to the Bruces, and from the Smiths to the Bruces. Accordingly, the only evidence presented to support the boundary line championed by the Salyers is the testimony and survey of Mr. Batte. In relevant part, Mr. Batte testified:

> Q. Mr. Batte, in preparing that survey, what preparation work did you perform?
>
> A. Originally, whenever Mr. Salyers hired us to do the survey, we go to the courthouse, draw all the surrounding deeds to research the property, take his deed back or even the adjoining deeds back for several references necessary to establish what's there, and then we go out and do the field work to see if there's field evidence marking any kind of lines or anything. And then if we have to go further back down or further one way or another to establish a line that might not be marked—anything marking or a deed might have a—not have a good call or nothing—no field evidence, we'd just have to do more research and survey more property basically.

Although he testifies that his usual course is to "draw the surrounding deeds," Mr. Batte did not proffer any of these historic deeds in support of his testimony. In addition, as noted above, even the Salyers's own deed was not made part of the record. Nonethless, when asked what, specifically, he had looked at to arrive at his boundary line, Mr. Batte testified, in relevant part, as follows:

> Q. And how far back did you go in researching this?
>
> A. Back to when the lake was built in the twenties. We have deeds down in here that will go back to the early twenties when Tennessee Valley Authority bought the property.[3]
>
> Q. And did you find [Tennessee Valley Authority] monuments and other indicators that would—that show that the lines comport with the deeds that you found?
>
> A. Yes, sir, I did.
>
> Q. Are there any significant indicators that you found in terms of monuments that helped explain the line between Mr. Salyers and Mr. Conder?
>
> A. The monument located here is the bigger—biggest concern because it's shown—All of three monuments here are shown on all the [Tennessee Valley Authority] maps.

Although Mr. Batte testified that he relied on Tennessee Valley Authority maps, none of these maps are contained in the record. In fact, Mr. Batte's testimony is supported only by his own survey. However, none of the maps, deeds, or other historic documents that Mr. Batte states he relied upon in reaching the location of the disputed boundary are contained in this record.

On the other hand, the Conders provide several pieces of evidence. As noted above, the Conders provided copies of the deeds conveying property to the Conders from the

_____

[3] As pointed out in Appellees's brief, Mr. Batte's testimony is erroneous in that the Tennessee Valley Authority was not created until the passage of the Tennessee Valley Authority Act of 1933, 16 U.S.C. 831. Appellees argue that Mr. Batte's misstatement that he found Tennessee Valley Authority maps from the early twenties damaged his credibility with the trial court. We have reviewed the trial court's order and statements and find no evidence that the lower court discredited Mr. Batte's testimony.

Ashbys, as well as the deed from the Conders to the Bruces, and the deed from the Smiths to the Bruces. All of these deeds contain property descriptions that comport with the Edwards Survey, which is also in the record. In addition to the Edwards Survey and the deeds, the Conders proffered their expert, Mr. Robert Barrett, who was asked by the Conders to survey the land in approximately 2004. Mr. Barrett provided his 2004 survey, but testified that he had revisited the site in 2006, after the Batte Survey was completed. Mr. Barrett stated that, in 2006, when he walked the property, he was looking for boundary markings made by Mr. Batte, but that he was unsuccessful in finding any. Although he could find no markings from the Batte Survey, Mr. Barrett testified that he was able to find markings from the Edwards Survey:

> So we found an iron pin by a painted and hacked Maple tree here at position B. And then from there to C, we found a straight line series of hacked trees with old orange paint in them. And it appeared to be obvious that that paint had aged to the point that we should date it as being at least as old to match the date of the Aaron Edwards' survey in 1981. We made no attempt to change this, saying that it was right or wrong. We simply remarked that.

> We found a steel post on the ridge top overlooking the lake at C that appeared to be in the correct position from the Edwards' survey. And there is a direction change in the line there according to the Edwards' survey that descended downhill down the bluff to the [Tennessee Valley Authority] corner through a series [of] blue painted marks.

> Q. So you were satisfied that constituted sufficient physical evidence of the existence of that line?

> A. I had retraced Aaron Edwards', yes, sir.

Mr. Barrett was then asked to review the warranty deeds, *supra*. Mr. Barrett then answered "Yes," when asked whether "the location of the boundary by those deeds is consistent with the rest of the boundary that you've located on your plat."

From the totality of the circumstances, it is clear that no evidence was introduced other than the survey itself and the testimony of the surveyor to support the boundary proposed by the Salyers. On the other hand, the boundary line urged by the Conders is supported by the Edwards Survey, the Barrett Survey and the metes-and-bounds descriptions

contained in the historical deeds. In addition, in its order, *supra*, the trial court specifically finds Mr. Barrett's testimony to be credible. From the record as a whole, we cannot conclude that the evidence preponderates against the trial court's finding that the Edwards/Barrett Surveys show the true boundary line between these properties.

In addition to their argument that the evidence, itself, preponderates against the trial court's conclusion concerning the location of the boundary line, the Salyers further contend that the trial court erred, as a matter of law, in applying Tennessee Code Annotated Section 28-2-109, which provides:

> Any person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom such person claims have paid, the state and county taxes on the same for more then twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom such person claims have had, such person's deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for such period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of such land.

This statute was recently discussed in the Tennessee Bar Journal:

> Boundaries may also be changed by determining whether taxes have been paid on the disputed property. Under Tenn. Code Ann. [§]28-2-109, proof that a landholder has paid the corresponding property tax for twenty years, and has also had the deed recorded under the landholder's name for twenty years, will give rise to a presumption that the landholder is the legal owner. However, this presumption is rebuttable. [*Corrado v. Hickman*, 113 S.W.3d 319, 324 (Tenn. Ct. App. 2003)]. In *White v. Pulaski Elec. Sys*., [No. M2007-01835-COA-R3-CV, 2008 WL 3850525 (Tenn. Ct. App. Aug. 18, 2008)] (holding that a trial judge did not err in granting summary judgment to the defendant regarding its land ownership despite plaintiff's payment of property taxes), the court found a preponderance of evidence showing an erroneous property description, and clear and convincing evidence that the claimant's purported title was invalid. [*Id*. at *5] Therefore, the court held that, despite the

claimant's payment of city and county taxes on the property in question for more than 20 years, the claimant could not benefit from the statutory presumption of ownership.[*Id*. at *5–6]

Chancellor Telford E. Forgety Jr., George W. Kuney, Devin P. Lyon, <u>Fortify Thyself: Know Tennessee's Real Property Rules & Tools before Charging into Boundary Battles</u>, 48 Tenn. B. J., Oct. 2012, at 14.

Here, the only proof as to tax payments was proferred by the Conders. Through the testimonies of Ms. Armstrong and Ms. Beasley, the Conders clearly established that they have paid the property taxes on the disputed property, under color of title, for at least the past twenty years. Under Tennessee Code Annotated Section 28-2-109, in order to create a rebuttable presumption of ownership, a party must show that: (1) he or she has a legal or equitable interest in the property; and (2) that he or she has paid taxes on the disputed property to the exclusion of any other party for twenty years. Tenn. Code Ann. §28-2-109. The Salyers contend that the first prong—possession of a legal or equitable interest in the property—is not met. However, having determined above that the evidence does not preponderate against the trial court's finding that the Conders own the disputed property, the first prong is satisfied. *Accord **Cass Rye & Associates, Inc. v. Coleman***, No. M2011-01738-COA-R3-CV, 2012 WL 4044862 (Tenn. Ct. App. Sept. 13, 2012).

As to the second prong—that the proponent has paid the taxes for the statutory period—the Conders have provided undisputed evidence in the form of tax receipts. Accordingly, and based upon the evidence, a rebuttable presumption of ownership in the Conders arose under Tennessee Code Annotated Section 28-2-109. The burden then shifted to the Salyers to rebut the presumption. From our review of the record, the Salyers have provided no countervailing evidence. Accordingly, the presumption of ownership remains unrebutted, and the trial court did not err in applying Tennessee Code Annotated Section 28-2-109 to support its finding on the boundary line.

Finally, we address the Conders's request for damages pursuant to Tennessee Code Annotated section 27-1-122, which provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." ***Wakefield v. Longmire***, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). "[I]mposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable—which is rare." ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 342 (Tenn. 2010) (citations omitted). We have reviewed the entire record in this case and, although we have ultimately determined the issues in favor of the Conders, we do not consider this appeal to be completely without merit. Accordingly, we deny the Conders's request for frivolous appeal damages.

For the foregoing reasons, the judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed against the Appellants, William Salyers and Pam Salyers, and their surety.

_____
J. STEVEN STAFFORD, JUDGE