IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 22, 2010 Session

# DOYLE SWEENEY, ET AL. v. CHARLES KOEHLER, ET AL.

**Appeal from the Chancery Court for Greene County**
**No. 20070091    Thomas R. Frierson, II, Chancellor**

_____

**No. E2009-02306-COA-R3-CV - FILED DECEMBER 7, 2010**

_____

This appeal involves a boundary line dispute based on competing surveys. The plaintiffs, Doyle and Gloria Sweeney ("the Sweeneys"), and the defendants, Charles and Valerie Koehler ("the Koehlers"), own adjoining real properties. The Sweeneys brought a declaratory judgment action against the Koehlers, seeking to have the boundary line declared between the parties. The Koehlers counterclaimed. The trial court found that the statutory bar codified in Tenn. Code Ann. § 28-2-110 did not apply to the Koehlers and that the Sweeneys were not entitled to a rebuttable presumption of ownership to the disputed land under § 28-2-109 based upon the payment of property taxes on the tract for over 20 years. The trial court determined the common boundary line as contended by the Koehlers. The Sweeneys appealed. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

William S. Nunnally, Greeneville, Tennessee, for the appellants, Doyle Sweeney and Gloria Sweeney.

Kelley Hinsley, Morristown, Tennessee, for the appellees, Charles Koehler and Valerie Koehler.[1]

## OPINION

_____

[1]Appellee Farm Credit Services of Mid-America, FLCA, did not participate in this appeal.

# I. BACKGROUND

The Sweeneys purchased a parcel of land from Lamon Albert Rice and Melba Jean Rice on February 6, 2007. The deed for this property claimed to convey "24 acres, more or less[,]" to the Sweeneys. The legal property description used in the Sweeneys' deed and in previous deeds in the chain of title dating back to March 1900, apparently contained missing calls but consistently purported to convey 24 acres of remote mountain land. No title opinion or survey of the boundary lines was performed at the time the Sweeneys purchased their property.

Adjoining the Sweeneys' land to the east is a tract that was acquired by the Koehlers by warranty deed on September 28, 2000. The property description in the Koehlers' deed recites the conveyance of 22.45 acres, more or less. The Trustees of East Tennessee Presbytery of the Cumberland Presbyterian Church own the land to the west and south (Camp John Speer property) of the Sweeneys' real property.

Shortly after the Sweeneys acquired fee simple title, a dispute arose between the Sweeneys and Koehlers with respect to the location of the common boundary line separating their respective properties. In an effort to resolve this boundary line dispute, the Sweeneys engaged the services of surveyor Michael A. Grigsby to survey the boundary lines delineating their property. The location of the common boundary line, as determined by Mr. Grigsby in his survey dated February 2007, is consistent with an old fence line and was indicated by Mr. Grigsby with iron rods and colored streamers.

Mr. Koehler disputed the common boundary line established by Mr. Grigsby.[2] He subsequently "removed at least one iron rod, certain old fencing[,] and the colored streamers." The Koehlers responded by retaining surveyor David S. Albert, who conducted a survey of their property. Mr. Albert's April 2007 survey depicted the parties' common

---

[2]At the eventual trial, Mr. Koehler testified as follows:

Q: . . . [I]f you left the corner area here where Mr. Sweeney's surveyor says the corner is –
A: Yes.
Q: – and you hike east –
A: Right.
Q: – what else will you find up there on the hill?
A: You'll find another fence.
Q: And if you hike down at or near your boundary over here coming down, what else will you find?
A: Well, that's a fence line also.

boundary line to the west of the line established by Mr. Grigsby, thus creating an overlap between the two properties.

On March 29, 2007, the Sweeneys filed a complaint, seeking a declaratory judgment in this matter. In the complaint, the Sweeneys alleged that the correct boundary line between the parties is the one established in the survey by Mr. Grigsby. The Sweeneys further asserted that they were entitled to the land in dispute based on the doctrine of adverse possession.

The Koehlers averred that an oral boundary agreement made by predecessors in title to the two adjoining properties established the common boundary line as the one indicated in Mr. Albert's survey. Accordingly, the Koehlers alleged that the Sweeneys were estopped from claiming ownership of the disputed land and denied any adverse use by the Sweeneys.

On July 27, 2009, the Sweeneys filed an amended answer to the Koehlers' counterclaim, raising the provisions codified in Tenn. Code Ann. §§ 28-2-109 and 28-2-110 (relating to payment of real property taxes) as an additional defense. The Sweeneys asserted that these statutory provisions act to bar the Koehlers' claim to the property in question, because, as the Sweeneys allege, the Koehlers and their predecessors in title did not pay property taxes on the property for a period exceeding twenty years.

A trial was held beginning on July 27, 2009, and concluding on August 4, 2009. Based on the conflicting surveys, the trial court found that the "disputed area" or overlap contained approximately 4.26 acres. In the Memorandum Opinion issued on September 14, 2009, the trial court determined that Tenn. Code Ann. § 28-2-110 did not preclude the Koehlers from bringing their claim and that the Sweeneys were not entitled to a rebuttable presumption of ownership under § 28-2-109. Additionally, the trial court concluded that an oral agreement made in 1966 between predecessors in title to the two land tracts effectively established the common boundary line, which is the same border shown in the Albert survey dated April 2007.[3] The Sweeneys filed a timely notice of appeal.

---

[3]As to the issue of adverse possession, the trial court found that "neither the Plaintiffs nor the Defendants have shown that the respective uses of the area in dispute, including that of their predecessors in title, have been actual, exclusive, open, visible, notorious, continuous, peaceable, hostile and adverse. *Ergo*, Plaintiffs are not entitled to claim ownership of the property in dispute nor are they entitled to defend title under statutory adverse possession. Likewise, the Defendants may not claim title thereto under such theory." The Sweeneys have not appealed this ruling.

## II. ISSUES FOR REVIEW

The Sweeneys raise five issues on appeal, which are restated here:

A. Whether the trial court erred in finding that Tenn. Code Ann. § 28-2-110(a) is not applicable in this case and that the Sweeneys were not entitled to a rebuttable presumption of ownership under Tenn. Code Ann. § 28-2-109.

B. Whether the trial court erred in admitting into evidence testimony of Calvin Clay Smith purporting to establish an oral agreement between predecessors in title to the two adjoining tracts, because such testimony constituted inadmissible hearsay.

C. Whether the trial court erred in establishing the common boundary line between the Sweeney and Koehler properties as shown in the Albert survey, which was based on an oral agreement described by Mr. Smith but disproved by the testimony of Lyle Harrison.

D. Whether the trial court erred in not finding the common boundary line to be the location of an old boundary fence shown in the Grigsby survey.

E. Whether the trial court erred in granting discretionary costs to the Koehlers.

The Koehlers present the issue of whether the trial court erred in failing to grant their request for attorney's fees.

## III. STANDARD OF REVIEW

This case was adjudicated without a jury. We review the decision de novo upon the record of the proceedings with a presumption of correctness as to the findings of fact of the trial court. *See* Tenn. R. App. R. 13(d); *Boarman v. Jaynes*, 109 S.W.3d 286, 289-90 (Tenn. 2003). This court imputes no presumption of correctness on the trial court's conclusions of law. *Rutherford County v. Wilson*, 121 S.W.3d 591, 595 (Tenn. 2003); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). In cases where the trial court's factual findings depend on a determination of witness credibility, we will not reevaluate that assessment in the absence of clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *Newman v. Woodard*, 288 S.W.3d 862, 865 (Tenn. Ct.

App. 2008). "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000).

A trial court's decision to admit or exclude evidence is generally reviewed under the abuse of discretion standard. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Thus, such a decision will not be overturned unless the court applied an incorrect legal standard or reached a decision contrary to logic or reasoning that caused injustice to the complaining party. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

## IV. DISCUSSION

### A.

The Sweeneys argue that they are entitled to the benefit of the statutory protections provided in Tenn. Code Ann. §§ 28-2-109 and 28-2-110 by virtue of the fact that they and their predecessors in title continuously paid real property taxes on the disputed land for a period exceeding 20 years. Tenn. Code Ann. § 28-2-109 provides that

> [a]ny person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom such person claims have paid, the state and county taxes on the same for more then twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom such person claims have had, such person's deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for such period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of such land.

Tenn. Code Ann. § 28-2-109 (Supp. 2009). In construing § 28-2-109, this court in *Corrado v. Hickman* stated that "if a party has paid taxes continuously for more than twenty years and has assurance of title that has been of record for more than twenty years, [then] a *rebuttable presumption of ownership* arises . . . ." *Corrado v. Hickman*, 113 S.W.3d 319, 324 (Tenn. Ct. App. 2003) (emphasis added).

Under the same argument, the Sweeneys contend that the Koehlers' claim to ownership of the property at issue is barred by operation of § 28-2-110, which states, in pertinent part, the following:

(a) Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

\* \* \*

Tenn. Code Ann. § 28-2-110(a) (Supp. 2009).

In *Cumulus Broadcasting, Inc. v. Shim*, the Tennessee Supreme Court specifically addressed the applicability of the statutory bar codified in § 28-2-110(a). *Cumulus,* 226 S.W.3d 366, 382 (Tenn. 2007). The *Cumulus* case involved a dispute between a broadcasting company and a neighboring property owner regarding ownership of an access road. *Cumulus Broad., Inc. v. Shim*, No. M2003-02593-COA-R3-CV, 2005 WL 3447698, at \*1 (Tenn. Ct. App. M.S., Dec. 15, 2005). The neighboring property owner appealed after the trial court concluded that the company had acquired the disputed portion of the access road through adverse possession. *Id.* at \*2 (The trial court found that Cumulus's claim was not barred by Tenn. Code Ann. § 28-2-110.). In reversing the trial court's decision, this court concluded that the trial court had misconstrued "the holding of *Winborn v. Alexander* to be 'that failure to pay taxes is not a bar to claiming real estate if the disputed portion is believed or considered to be a part of a main parcel of land on which taxes are being paid and the dispute does not pertain to a separate parcel.'" *Id.* at \*3 (citing *Winborn v. Alexander*, 279 S.W.2d 718, 729 (Tenn. Ct. App. 1954)). Accordingly, the Court of Appeals in *Cumulus* strictly applied § 28-2-110(a), rejecting the interpretation that the *Winborn* ruling had created a "contiguous property exception" to the statute. *Id.* at \*4.

Overruling our decision in *Cumulus*, the Tennessee Supreme Court held that "[§] 28-2-110 should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes." *Cumulus*, 226 S.W.3d at 381. Thus, the Supreme Court's decision in *Cumulus* authorizes a "contiguous property exception" to the statutory bar under § 28-2-110. The Supreme Court explained the rationale for its decision, thus providing further guidance in the application of the statutory bar:

A tax map is permissible in a boundary dispute to confirm the payment of taxes but is not particularly helpful for the purpose of establishing a boundary line. . . . Thus, "plats from a county assessor's office are admissible [only] for

-6-

the purposes of determining who paid taxes on a particular piece of real property. . . ."

Because tax maps are for the purpose of showing the plats upon which parties have paid taxes rather than establishing boundaries, a "slight overlap" would rarely have any effect on an evaluation for tax purposes. Tennessee Code Annotated section 28-2-110 was enacted in order to facilitate the collection of property taxes based upon property evaluations. . . . Because tax maps do not identify precise boundaries and actual boundaries are established by intent, the Defendant Shim cannot prevail. Tennessee Code Annotated section 28-2-110 should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes. . . .

*Cumulus*, 226 S.W.3d at 381 (internal citations omitted).

The case at bar involves adjacent properties with a common boundary, the specific location of which has been brought into question by competing surveys. Invoking the conditions enunciated in *Cumulus*, the trial court determined that "the real property tracts of Plaintiffs Sweeney and Defendants Koehler are contiguous, that a relatively small area is at issue and that the adjacent owners, each asserting claims of ownership[,] have paid their respective real property taxes . . . ." Joyce Gregg, an employee for 29 years at the Office of the Tax Assessor for Greene County, testified at trial that the parties' tax parcels are "next door" to one another.

The Sweeneys dispute the trial court's finding that 4.26 acres amounts to "a relatively small area." Although the Supreme Court in *Cumulus* failed to clarify what constitutes a "slight overlap" or a "relatively small area," Tennessee case law after the *Cumulus* decision has helped to define this factor. In *Quarles v. Smith*, for example, this court determined a 14-acre disputed property to be "relatively small" compared to the approximately 150 acres of undisputed property owned by the parties. *Quarles v. Smith*, No. W2009-00514-COA-R3-CV, 2010 WL 653011, at *6 (Tenn. Ct. App. W.S., Feb. 24, 2010). *Compare id.* (finding that defendant's claim to 14 acres of disputed property was not barred by § 28-2-110), *with Jack v. Dillehay*, 194 S.W.3d 441, 444 (Tenn. Ct. App. 2005) (finding that plaintiff's claim to 32 acres of disputed land was barred under § 28-2-110). The disputed area in *Quarles* constituted about 9.3 percent of the total land. The 4.26 acres disputed by the Sweeneys and Koehlers represents about 9.2 percent of their collective acreage. We therefore find that the evidence presented at trial does not preponderate against the trial court's finding that the disputed land at issue is relatively small.

Regarding the payment of taxes, the Memorandum Opinion recites that "copies of tax maps existing since 1975 were introduced as evidence to establish that Plaintiffs and their predecessors in title were assessed and had paid real property taxes with reference to the acreage in dispute for a period exceeding twenty years." However, the trial court likewise found that the Koehlers had paid their respective real estate taxes, which they believed included the "relatively small" tract in dispute. Thus, the trial court, relying on the pronouncements in *Cumulus*, concluded that Tenn. Code Ann. §§ 28-2-109 and -110 were inapplicable in this case. Upon our review, we conclude that the evidence does not preponderate against the findings of the trial court. We therefore affirm the trial court's decision on this issue.[4]

**B.**

The Sweeneys next raise an evidentiary issue. They contend that the trial court erred in admitting inadmissible hearsay evidence regarding an oral agreement between predecessors in title to purportedly establish a common boundary line between the two adjoining properties. This issue concerns the trial testimony of Calvin Clay Smith, the son of Tom and Dora Smith who previously owned the property upon which the Koehlers now live. Mr. Smith lived on the property until he was 24 years old. He testified that his parents told him about an agreement they made in 1966 with the Harrisons (predecessors in title to the land now owned by the Sweeneys) regarding the location of a common boundary line. Portions of Mr. Smith's testimony have been extracted from the record and are presented below.

Q:             Before your father and your mother died, were you ever in a conversation with them while they owned the land that is now owned by Koehler?

Mr. Nunnally:  Of course, I am objecting to hearsay.

The Court:     Do you wish to respond?

---

[4]Even if the Koehlers had been precluded from bringing the counterclaim by the statute, they would have been able to defend their claim to title in the Sweeneys' lawsuit. *See Burress v. Woodward*, 665 S.W.2d 707, 709 (Tenn. 1984) (A party is "restricted under the statute from bringing suit because of failure to pay taxes for a period of more than twenty years. However . . . 'nothing in § 28-2-110 prevents Defendants from defending their title.'") (citation omitted).

Mr. Hinsley: I think the Rule in establishing ancient boundaries would permit as an exception to the hearsay rule testimony, conversations between the then owners of the land and third parties.

The Court: Overruled. You may ask.

Q: Any conversations with them about discussing and arriving at an agreement with respect to the location of a boundary between their property and Clark and Virginia Harrison?

A: Yes, my mother and father got with Clark and Virginia Harrison.

Q: And, how do you know this?

A: Well, they told me they did.

(At this point, counsel for the Sweeneys objected as to hearsay within hearsay.)

* * *

Q: And at a time – can you tell me the approximate year that the conversation was had with you and your mother and father?

A: It would have been in '66.

Q: And now tell the Court the substance of that conversation between you and your mother and father regarding any agreement with respect to boundaries.

A: Well, they told me they had got with Clark and Virginia Harrison and they was going to have the line surveyed between them. .

.  .  Well, it went on for a few days, you know, and then one day when I came home from work they had done the surveying.

* * *

Q:          . . . [W]hat if anything did you observe that your father did after the survey was run in 1966?

A:          Well, he put up enough stakes just to mark the boundary line.  Now he didn't build no fence like put barb wire and stuff.  He put up stakes to mark the line after it was surveyed.

Q:          . . . [W]hat did those stakes look like when you put them up?

A:          They were locust stakes.

* * *

A:          I seen the posts after he put them up, and I seen the line where the survey had taken place, and that's where he put the posts was on the survey.

* * *

The Sweeneys argue that under *Norman v. Hoyt*, 667 S.W.2d 88 (Tenn. Ct. App. 1983), Mr. Smith could have said what his parents said to him about the location of the boundary line and, if the Harrisons had said anything to him about the location of the boundary line.  They assert, however, that Mr. Smith could not relate that his parents told him that they entered into an oral agreement with the Harrisons after the Harrisons agreed to a new boundary.  The Sweeneys stress that Mr. Smith was not present to hear the Harrisons enter into the agreement.

Rule 803 of the Tennessee Rules of Evidence permits certain exceptions to the inadmissibility of hearsay evidence.  Rule 803(20) (Reputation Concerning Ancient

-10-

Boundaries) is directly relevant to the present case and allows the court to consider testimony regarding the "[r]eputation in a community, arising before the controversy and existing thirty years, as to the boundaries of or customs affecting lands in the community." Tenn. R. Evid. 803(20). As the Koehlers noted in their brief, Tennessee courts have permitted the consideration of testimony by third-party witnesses as to boundary agreements between predecessors in title to adjoining properties. *See*, *e.g.*, *Lafever v. Lafever*, No. M2008-00651-COA-R3-CV, 2009 WL 167329, at *8 (Tenn. Ct. App. M.S., Jan. 23, 2009); *Norman*, 667 S.W.2d at 90. In *Norman*, we noted that "[d]eclarations of former owners which took place during ownership and especially accompanied with possession are admissible to establish boundary lines. It is not necessary that the former owner testify to the declarations. They may be testified to by third parties who heard the declarations." *Norman*, 667 S.W.2d at 90 (citing *Davis v. Jones*, 40 Tenn. 602 (1859)). Accordingly, it was proper for the trial court to find Mr. Smith competent to testify regarding the declaration of his parents made to him while they were in possession of the property. Because the trial court was in the best position to determine Mr. Smith's credibility and demeanor, we find the trial court did not err in considering his testimony.

## C.

We consider together the Sweeneys' third and fourth issues regarding the trial court's determination of the location of the common boundary line. First, the Sweeneys argue that the trial court erred when it found that the Albert survey gave the more correct description of the boundary line in dispute, because this survey was based on the alleged oral agreement described by Mr. Smith. Second, challenging Mr. Smith's credibility, the Sweeneys contend that the trial court should have given greater weight to the testimony of Lyle Harrison.

The Sweeneys assert that Mr. Smith did not specifically testify that an oral boundary agreement was made. They further contend that Mr. Smith acknowledged that he never saw any written 1966 survey and has been unable to locate a copy. They additionally argue that Mr. Smith was not a credible witness because he denied there was a fence coming from the mountain and down through the fence row, even though photographs of it were introduced into evidence and other witnesses said it was there and was the line.

Lyle Harrison, the son of Clark and Virginia Harrison, inherited part of the land now owned by the Sweeneys upon his mother's death.[5] Mr. Harrison testified that his father never told him anything about an oral boundary agreement and he did "not know of any agreement

___

[5]Mr. Harrison noted that while his father actually purchased the property, it was placed in his mother's name.

-11-

[his father] made with anyone legally or in writing . . . to move property boundary lines or fences." He recalled that around 1992, his father indicated to him that the next door neighbor was claiming the boundary to be where the locust and metal fence was, not at the old fence line. He noted that up until then, the neighbor had occupied a portion of the Harrison property with permission – his father often allowed neighbors to put cows on the property to keep the vegetation down.[6] Mr. Harrison testified that someone then came to his father requesting to buy the land in dispute and that the property was ultimately sold.

As to the assertion by the Sweeneys that Mr. Smith was not a credible witness, the responsibility for assessing the "weight, faith, and credit" to be ascribed to the testimony of witnesses lies in the first instance with the trial court because of its first-hand position in observing the demeanor of witnesses. *McCaleb v. Saturn Corp.,* 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker,* 957 S.W.2d 834, 837 (Tenn . Ct. App. 1997). As a result, this court assigns great deference to the trial court's findings based on witness credibility. *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). Furthermore, "[i]n resolving a boundary line dispute, it is the role of the trier of fact to evaluate all of the evidence and assess the credibility of the witnesses." *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999).

With regard to oral boundary agreements, "[i]t is well settled that parties owning adjoining lands may by agreement establish a boundary line between their land where there is no certain and established line known to them." *Jack*, 194 S.W.3d at 447 (quoting *Winborn*, 279 S.W.2d at 726). "Such an agreement may be established by oral agreement and is not subject to the statute of frauds." *Id.*; see also *Brooks v. Brake,* No. 01A01-9508-CH-00365, 1996 WL 252322, at *5 (Tenn. Ct. App. W.S., May 15, 1996); *Thornburg v. Chase,* 606 S.W.2d 672, 674 (Tenn. Ct. App. 1980). To establish the existence of an oral boundary agreement, the *Jack* Court stated that a party must prove that [t]he boundary line fixed by the [oral] agreement . . . [is] definite, certain, and clearly marked, and that it . . . [is] made by adjoining landowners with reference to the uncertain or disputed boundary line between their lands. . . . *Jack*, 194 S.W.3d at 447. "Once parties establish a boundary line pursuant to oral agreement, they and their successors are estopped from challenging the line, even if it is later discovered that the parties were mistaken as to the location of the line at the time of the agreement." *Id.*, 194 S.W.3d at 448 (citing *Galbraith v. Lunsford,* 9 S.W. 365, 368 (Tenn. 1888)).

As stated in its Memorandum Opinion, the trial court found

---

[6]Witness Helen Rice testified that the Koehlers told her that Donnie Miller, the former owner of the Sweeney property, gave the Koehlers' permission to put cattle on his property. Mr. Koehler confirmed in his testimony that he had erected temporary electric fences over on Mr. Miller's property and that Mr. Sweeney had removed them.

the common boundary line established by the oral agreement between the Smiths and the Harrisons in 1966 [to be] definite, certain and clearly marked. Until the present dispute arose, the parties' predecessors in title acquiesced in the boundary line and assumed possession and use of the property up to the agreed boundary. The Plaintiffs and Defendants as successors in title are estopped to challenge the location of the line established in 1966. . . .

The Albert survey locates the common boundary line along the course marked by the existing locust posts, which apparently were established in response to the 1966 oral agreement.

Based upon our review of the record in the instant case, we cannot find that the evidence preponderates against either the trial court's decision to give "weight, faith, and credit to Mr. Smith's testimony regarding the 1966 oral agreement or the determination of the proper placement of the boundary line. The Sweeneys "have failed to carry their appellate burden of showing that the evidence preponderates against the Trial Court's findings and judgment." *Norman*, 667 S.W.2d at 90 (citing *Capital City Bank v. Baker*, 442 S.W.2d 259 (Tenn. Ct. App. 1969)).

D.

Lastly, the Sweeneys assert that the trial court erred in awarding discretionary costs to the Koehlers. The trial court held as follows:

That the Defendants Koehler were the prevailing parties in this litigation and under Rule 54.04 of the Tennessee Rules of Civil Procedure, the Court is empowered, in its sound discretion, to grant a judgment for the recovery of certain costs and the Court does find that the Defendants Charles Koehler and wife, Valerie Koehler, are entitled to a judgment for the recovery only of the costs of their charges for services of the court reporter and the surveyor's expert fee for trial and depositions. No recovery shall be allowed for the surveyor's field work, trial preparation with counsel, office computing, etc.

The trial court awarded a total judgment of $5,050.80.

A "prevailing party" may request discretionary costs, such as "reasonable and necessary court reporter expenses for depositions or trials, [and] reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials." Tenn. R. Civ. P. 54.02(2). The purpose of awarding discretionary costs is to help "make the prevailing party

-13-

whole," not to punish the losing party. *Owens v. Owens*, 241 S.W.3d 478, 496-497 (Tenn. Ct. App. 2007).

When deciding whether to award discretionary costs under Rule 54.04(2), the trial court should:

(1) determine whether the party requesting the costs is the "prevailing party,"

(2) limit awards to the costs specifically identified in the rule,

(3) determine whether the requested costs are necessary and reasonable, and

(4) determine whether the prevailing party has engaged in conduct during the litigation that warrants depriving it of the discretionary costs to which it might otherwise be entitled.

*Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13,35-36 (Tenn. Ct. App. 2002) (citations omitted). The burden is on the movant to convince the trial court that it is entitled to discretionary costs. *Carpenter v. Klepper*, 205 S.W.3d 474, 490 (Tenn. Ct. App. 2006); however, as a general matter, courts should "award discretionary costs to a prevailing party if the costs are reasonable and necessary and if the prevailing party has filed a timely and properly supported motion." *Mass. Mut.*, 104 S.W.3d at 35.

Rule 54.04(2) costs expressly address themselves to the sound discretion of the trial court. *Stalworth v. Grummins*, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000). On appeal, this court will not substitute our own discretion for that of the trial court. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). We will only overturn a discretionary decision when the trial court has applied an incorrect legal standard, reached an illogical decision, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party. *Mass. Mut.*, 104 S.W.3d at 35. The appellant bears the burden of demonstrating that the award constitutes an abuse of discretion by the trial court. *Sanders* v. Gray, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998).

The record before us reveals that the trial court did not abuse its discretion by awarding discretionary costs in this matter. The court likewise properly determined that the Koehlers were not entitled to recover attorney fees under the facts of this case. The claim asserted by the Sweeneys was clearly brought in good faith. *Ezell v. Graves*, 807 S.W.2d 700, 704 (Tenn. Ct. App. 1990).

## V. CONCLUSION

We affirm the decision of the trial court and this cause is remanded to the trial court for collection of costs below. Costs of the appeal are assessed against the appellants, Doyle and Gloria Sweeney.

_____
JOHN W. McCLARTY, JUDGE