IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 22, 2011 Session

GLENN CUPP ET AL. v. BILL HEATH ET AL.

Appeal from the Chancery Court for Claiborne County
No. 16652     Billy Joe White, Chancellor

No. E2010-02364-COA-R3-CV-FILED-AUGUST 11, 2011

In late 2007, the defendant Bill Heath[1] built a fence on a line running generally east and west, said line having been established by surveyor Bill Parsons in 1990 and then re-staked in 2007 by surveyor Dennis Fultz. The plaintiff Glenn Cupp, an adjoining landowner to the south of Heath, hired surveyor Mark Comparoni to establish his northern line because Cupp believed Heath had built the fence much too far to the south. Marjorie Keck, who joins Heath on her northern boundary and Cupp on her western boundary, also commissioned Comparoni to survey her land. Comparoni's survey confirmed that Heath's new fence incorrectly encompassed approximately 35 acres of Cupp's land and approximately 6 acres of Keck's land. Cupp and Keck filed this action against Heath in 2008 to establish their northern boundary with Heath and the Cupp/Keck common boundary as surveyed by Comparoni. The trial court found that the Comparoni survey correctly established the boundary lines of all the parties. Heath appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Thomas J. Tabor, Jr., Tazewell, Tennessee, for the appellants, Bill Heath and Virginia Heath.

---

[1]We recognize that most of the parties and predecessors are or were married and that their spouses are or were at least indirectly involved in some of the matters we will be discussing. However, for the sake of clarity, where the context permits, we will refer to the last name only or the first and last name of the person most directly involved. We will occasionally refer to Glenn Cupp and wife, Bonnie Cupp, and Marjorie Keck, collectively as "the Plaintiffs."

Dennis M. Robertson, Harrogate, Tennessee, for the appellees, Glenn Cupp and wife, Bonnie Cupp, and Marjorie Keck.

**OPINION**

I.

The general vicinity of the property in dispute in this case is east of Highway 33 in Claiborne County near Midway School. It lays between Goins road on the south and Lily Grove Road on the north. Bill Heath and wife Virginia Heath bought their property from family members in 1975. They purchased land on the north and south side of Lily Grove Road. We are concerned here only with the land on the south side of Lily Grove Road. It was "all of the lands owned by Tompie Keck at the time of his death on the South side of the Lily Grove Road and extending in a Southwardly and Southwestwardly direction to the top of the ridge." The calls that establish the southern boundary are

> in a Southwardly direction with the Ted Keck property line to
> the common corner of Ted Keck, Tompie Keck, Russell Keck
> and perhaps others; thence in a Southwestwardly direction with
> the Russell Keck property line and thence continuing in a
> Westwardly direction with said Russell Keck property line to the
> intersection of the Tompie Keck and Russell Keck property line
> in the Collins property line; thence in a Northwardly direction
> with the property line of Collins . . .

There were no prior or contemporaneous surveys of the Heath property. As can be seen from the description, there is no reference to natural or artificial monuments – only the line of Russell Keck and certain points in that line.

Heath commissioned William Parsons to survey his land. Bill Heath later testified that the survey was done for the purpose of conveying the land to his son. The conveyance, if it exists, was never recorded. Parsons completed his survey in 1990. Heath recorded the plat Parsons prepared. It references a stone at the southwest corner of Heath and Russell Keck and a stone at the southeast corner of Heath, Russell Keck, Margie (Marjorie) Keck, and others. Heath did not fence the area surveyed. The line was marked with plastic survey flags and some paint. Parsons did not testify at trial.

County tax records show that Heath paid taxes on 107 acres in 1990. In 1991, after the Parsons survey was recorded, Heath began paying taxes on 156 acres. In 1990, Russell Keck paid taxes on 118.5 acres. He and his widow Christine Keck continued to pay taxes

on 118.5 acres until 2007, when the acreage fell to 81 acres. Marjorie Keck paid taxes at all relevant times on 42.5 acres.

In 1946 Russell Keck and wife Christine Keck purchased a tract of land from relatives, the northern boundary line of which is established by the following calls beginning at a

> sassafras; thence eastwardly to a post oak on top of hill in Goin's line; thence across the field north 61 east 44 poles to a chestnut; thence south 36 east to a fixed stone at Tom Kecks and A.C. Goin's corner . . .

As with the Heath deed there was no contemporaneous survey.

In about 1947 Marjorie Keck took title along with her husband to a parcel of land that joined Russell and Christine Keck on the east. Her deed is not in the record.

Christine Keck sold all her property on the north side of Goins road to George L. Cupp and Bonnie L. Cupp in December of 2008. In the meantime, Heath hired surveyor Dennis Fultz, not to survey, but to stake the southern portion of the lines surveyed by Parsons in 1990. The stated purpose was so that Heath could fence the property. Fultz did not speak with Parsons. Heath showed Fultz the location of where he thought the line was although Fultz found some of Heath's indications to be incorrect. Fultz completed his work in November 2007. Heath began the fencing and the Plaintiffs in this case protested. Eventually Heath completed the fencing.

Cupp and Marjorie Keck hired Comparoni to survey their land as well as identify the area in conflict. We believe a portion of Comparoni's survey is the best vehicle for demonstrating the location of the respective parcels and the area in dispute. We have displayed that portion, with minor editorial changes to identify the parties and the area in dispute, as Figure 1.:



Figure 1.

There are approximately 6 acres in conflict between Heath and Marjorie Keck and approximately 35 acres in conflict between Heath and Cupp. To elaborate on what we have previously stated and to help with orientation as to Figure 1., the 35 acres lays at the southern portion of what Heath claims and the northern portion of what Cupp claims. It is more or less rectangular, slightly wider east and west than it is north and south. The 6 acres in dispute between Heath and Keck lays at the eastern side of what Heath claims and the western side of what Keck claims. It is pie-shaped, with the point to the south.

-4-

Comparoni later testified that he had very little trouble with his survey other than at the northwest Cupp corner that references a sassafras in the deed of Cupp's predecessor. Ultimately, he determined the location of the corner by talking to Mr. Doug Cardwell who was shown the approximate location of the corner when he was involved in logging the property for Russell Keck in the early 1980s. Cardwell did not know the exact location, but could get within a few feet. Once given the approximate location by Cardwell, Comparoni testified that everything more or less fell into place. The courses and distances matched within acceptable tolerances and were also confirmed by natural monuments including the reference to "top of hill," the "field," and other accepted corners. According to Comparoni, Parsons' survey was not consistent with the "top of anything." Camporani formed an opinion that Parsons merely surveyed according to what Heath pointed out and asked him to survey and that Cupp's and Marjorie Keck's boundaries encompassed the disputed area.[2]

Cupp and Keck filed this action (collectively "the Plaintiffs"). Heath filed a responsive pleading styled "ANSWER" which first addressed the 16 numbered paragraphs of the complaint and then stated, without separation by heading or bold or distinctive type or font of any nature as follows:

> Come your original Defendants, Bill Heath and wife, Virginia Heath, and would now assume the role of Counter Plaintiffs, and would show unto this Honorable Court as follows:
>
> 1. As an affirmative defense to this cause of action, your Defendants would show the area of dispute has never been in dispute until the Plaintiffs purchased their property and more particularly, this property has been in the Defendant's family since 1778 therefore, they have obtained the same by adverse possession if not by color of deed.
>
> Thereafter in November, 1975, the Defendants purchased property in question and attached to the farm that had previously been in the family for several generations; therefore, they own the same by adverse possession if not by color of title.
>
> 2. Your Counter Plaintiffs would further show that they have paid taxes on the disputed area.

---

[2]This is an overview of the background of the case. We will deal with the particulars of testimony as needed in analyzing the issues and arguments.

3. Your Counter Plaintiffs would further show that Bill Parsons surveyed the same and same was recorded of record and, therefore, the Plaintiffs are estopped to deny the same through their predecessors of title.

4. As a further affirmative defense, predecessor in title, Russell Keck and Counter Plaintiff, Bill Heath agreed as to the line between the property of the parties and a fence was built at one-half of the costs paid by the Russells and one-half paid by the Heaths.

5. As a further affirmative defense, the Russell Property was logged and logger was advised by Russell to contact Heath to locate the line prior to construction of the fence in that the Plaintiff's predecessor in title relied upon Heath as to the location of the boundary between the parties prior to fencing.

WHEREFORE, your Counter Plaintiff specifically defend title to the subject property by way of deed, adverse possession, recorded survey, payment of taxes, agreement between the parties, estoppels, latches [sic], and, therefore, demand that the

Complaint filed against them be dismissed with attorney fees, discretionary costs and costs of this cause taxed to the Plaintiffs.

After hearing the proof, the court announced its findings and the reasons as follows:

. . . I've given . . . all [the witnesses] the benefit of being truthful people. . . . They make mistakes, somebody has . . . .

Right, wrong or indifferent, I'm going to decide it. I hope you'll understand that it's with no degree of animosity toward anybody. Everybody that's involved is good people. They just have a difference of opinion, but this is what I think after listening to this lawsuit.

And I want to be very careful and to not violate the Supreme Court's statement one time that the trial court can't be a witness. . . . . But Mr. Parsons has testified in this court . . . many times.

-6-

I've had lots of problems with Mr. Parsons. And this – Mr. [Comparoni] testified about some of these things so I'm – I'm using what he's stating. . . . He has come into this Court with surveys where he did both of them and overlapped them.

* * *

. . . . He's infamous for just letting somebody tell him where the corners are and not surveying and not having independent judgment. Furthermore, he's not here as a witness, and I think if the parties of this lawsuit really thought that Mr. Parsons had a correct survey, that he would be here and he's not.

Doug Cardwell testified very plainly that he cut timber on this property very near the cleared field where he – He was loading timber close enough that he could see the cleared field. He said he had no conversations and nobody complained. These calls and distances on Mr. [Comparoni]'s survey fit this northern line. It does not fit – they do not fit the southern line.

A lot of testimony in this case that the plaintiff in this matter cut firewood off this, they've cut timber on it, they've cut firewood off of it. But I think if we withdraw the survey of Mr. Parsons and just do away with it, that we have a completely different outlook.

Now, Mr. Fultz is a very competent surveyor also, but he did not survey this property. He was hired to locate Mr. Parsons' corners, which he did. And he has problems with the southern line, and he does not believe the eastern line where the new fence is, is at all correct.

Based upon all the testimony in this case, all these witnesses have testified; it is my opinion that the [Comparoni] suvey is the correct boundaries between the parties. . . .

The court entered what purported to be a "FINAL DECREE" establishing the survey of Comparoni as the boundary line. Heath appealed to this court. We ordered Heath to show cause why the appeal should not be dismissed because "the final decree does not specifically address the counterclaim filed by the appellants below or their claim for attorney's fees." We

later ordered the matter remanded to the trial court "for the purpose of allowing the parties to have entered an amended final decree resolving the issues left unresolved" by the trial court's previous order. Our order of remand directed the trial court to transmit the record of any supplemental proceedings to this court for final disposition. On remand the trial court entered an "AMENDED FINAL DECREE" in which if stated that

> insofar that the answer contained a counterclaim, that the same is hereby dismissed, and that no attorney fees or other discretionary cost are awarded to or against either the plaintiffs or the defendants.

## II.

Heath raises the following issues which we have repeated verbatim:

> Did the trial court err as a matter of law in summarily ruling that the property boundary line dispute of this lawsuit should be determined by the [Comparoni] survey; whereas, [Heath's] direct evidence of natural objects (landmarks) mentioned in the deed, artificial markers, prior surveys, and established fence lines by agreement of the landowners clearly preponderates against that ruling?

> Did the trial court err by not finding that the property in question was acquired by . . . Heath by adverse possession?

> Did the trial court err as a matter of law by not finding that [Heath was] entitled to the statutory protections of a rebuttable presumption of ownership under Tennessee Code Annotated §§ 28-2-109 & 28-2-110?

> Did the trial court err as a matter of law under Rule 7.01 & 8.04 of the Tennessee Rules of Civil Procedure by not deeming the . . . Counter-Complaint as "admitted" by the [Plaintiffs] due to the fact that [they] did not file an Answer or any responsive pleading . . . ?

III.

The standard of appellate review for the predominant issues in this case was articulated in ***Wood v. Starko***, 197 S.W.3d 255 (Tenn. Ct. App. 2006).

> The review of a decision rendered in a boundary dispute is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. ***Boarman v. Jaynes***, 109 S.W.3d 286, 290 (Tenn. 2003). In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect. ***Rawlings v. John Hancock Mut. Life Ins. Co.***, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001).

***Id***. at 257.

IV.

Heath argues that the evidence preponderates against the trial court's finding that the Comparoni survey correctly establishes the boundaries because (1) the trial court committed errors of law in (a) not giving the proper weight to the Parsons' survey as the first survey of the boundary line in question and (b) not giving greater weight to the artificial monument of the sassafras corner over the courses and distances used by Comparoni, and (2) the court should have found an oral agreement as to the boundary line between Heath and Russell Keck, Cupp's predecessor in interest. We will deal with these arguments one point at a time.

The argument that the first survey of a boundary line must always carry the greater weight than a later survey, even if it is wrong, is a misapplication of language in the ***Starko*** opinion. Heath relies heavily upon the following language from ***Starko***:

> It has been declared that all the rules of law adopted for guidance in locating boundary lines have been to the end that the steps of the surveyor who originally projected the lines on the ground may be retraced as nearly as possible; further, that in determining the location of a survey, the fundamental principle is that it is to be located where the surveyor ran it. Any call, it has been said, may be disregarded, in order to ascertain the footsteps of the surveyor in establishing the boundary of the tract attempted to be marked on the land; and the conditions and

-9-

circumstances surrounding the location should be taken into consideration to determine the surveyor's intent.

* * *

The original survey must govern if it can be retraced. It must not be disregarded. So, too, the places where the corners were located, right or wrong, govern, if they can be found. In that case a hedge planted on the line established by original survey stakes was better evidence of the true line than that shown by a recent survey. In making a resurvey it is the surveyor's duty to relocate the original lines and corners at the places actually established and not to run independent new lines, even though the original lines were full of errors.

* * *

The line actually run is the true boundary, provided the essential survey can be found and identified as the one called for, and prevails over maps, plats, and field notes. . . . The lines marked on the ground constitute the actual survey and where those lines are located is a matter to be determined by the jury from all the evidence. If the stakes and monuments set at the corners of the parcel in making the survey have disappeared, it is competent to show their location by parol evidence.

* * *

Marked corners are conclusive and will control over courses and distances. Although stakes are monuments liable to be displaced or removed, they control so long as it is certain that they mark the corners of the original survey.

*Id.* at 259 -260 (citations and internal quotation marks omitted).

Cupp correctly points out that *Starko* makes sense in the context of the facts of that case but not this one. The original survey referenced repeatedly in *Stark*o was done for the common owner of two adjacent lots, both of which eventually were sold to separate owners. Thus, the original surveyor's attempt to created a line for the common owner that matched

-10-

the subdivision layout carried controlling weight with regard to successors of the common owner.

A far different set of facts is presented in the case before this court. There is not a common owner for whom Parsons was surveying. Parsons was surveying only for Heath. Heath did not convey anything to Cupp or to Marjorie Keck. Parsons did not testify, but Heath admitted that he showed Parsons the corners he claimed. Heath's subsequent surveyor, Fultz, had no idea how Parsons located the corners. Fultz was convinced, however, that Parsons' survey was incorrect insofar as it included the "pie shaped" parcel that, by deed, belonged to Marjorie Keck. Heath's southern boundary as surveyed by Parsons had the effect of encompassing land that Marjorie Keck claimed and it obliterated any common boundary between Cupp, and Marjorie Keck. For these reasons, Fultz admittedly informed his client Heath, that there were major problems with claiming Marjorie Keck's land through the line surveyed by Parsons. In short, we have no criticism of the ***Starko*** opinion, but it is simply not applicable to our facts. Absent adverse possession, there is no logical reason on the facts of this case to bind Cupp or Marjorie Keck to an erroneous survey performed by Parsons for Heath.

Heath's argument that the trial court's refusal to accept the sassafras corner as marked by Parsons as a definitive natural boundary marker is also a misapplication of a common rule repeated in ***Starko***, 197 S.W.3d at 258:

> [I]n ***Thornburg v. Chase***, 606 S.W.2d 672, 675 (Tenn.Ct.App.1980), this Court stated that "[i]n determining disputed boundaries, resort is to be had first to natural objects or landmarks, because of their very permanent character; next, to artificial monuments or marks, then to the boundary lines of adjacent landowners, and then to courses and distances."

Again, we conclude that the rule asserted by Heath is not applicable to our facts. There was much dispute in the testimony in this case as to where the sassafras was located and particularly whether the one marked by Parsons and later located by Fultz was the true corner of Cupp and Heath. Even Fultz had to admit that if the sassafras as located by Parsons is taken as the true corner, the subsequent calls lead to locations not claimed by any of the parties as their corner. Heath admitted pointing out the corners to Parsons. The sassafras is a call in the deed of Cupp's predecessor – not in Heath's deed. Comparoni gave four logical reasons for refusing to accept the sassafras tree as surveyed by Parsons as the true corner: (1) If the sassafras is accepted as the true corner, and the Parsons survey is treated as correct, it makes the acreages as stated in all party deeds incorrect; (2) The sassafras corner does not match with any of the topography or distances of subsequent calls; (3) The description of the

corner with Russell Keck in Heath's deed is "in the line of Collins" and not at a corner with adjoiner Collins which should place the tree north of where Parsons located it, and (4) When Doug Cardwell gave surveyor Comparoni the approximate location of the true corner as told to Cardwell by Russell Keck and Sylvester Collins, everything came into focus and made sense. The courses and distances matched the topography of a ridge which is also a natural monument. Further, there is an old fence line that corresponds to the location that Comparoni marked as the true corner. There is no fence other than the one erected by Heath in 2008 at the location surveyed by Parsons.

Comparoni's testimony is supported by the testimony of Fred Cupp who tended the property of Russell Keck's widow, Chrisine, for many years. He was shown the plat prepared by Comparoni and confirmed that the northern boundary of Christine Keck was as surveyed by Comparoni. Glenn Cupp testified that in his youth he helped Fred Cupp and the people that worked for Fred repair a fence in the proximity of the northern boundary as surveyed by Comparoni.

Heath makes much of the fact that Cardwell admitted on cross-examination that he did not know the exact location of the sassafras, and that Comparoni admitted basing his location of the corner, at least in part, on the parole conversation with Cardwell. We have reviewed Cardwell's testimony in detail and conclude that Heath overstates the impeachment of Cardwell. The conversation of Cardwell with Comparoni was confirmed by the testimony of Glenn Cupp, who was present. Also, Cardwell's testimony is consistent with Comparoni's in that Cardwell told the surveyor that he could get "close" but could not pinpoint the location of the corner because both Russell Keck and Sylverster Collins pointed him to an approximate location, within a few feet of the corner. Cardwell is not the only witness who put the northern boundary of Russell Keck and his successor, Glenn Cupp, in accord with the corner as established by Camporoni. Further, even Heath's surveyior Fultz virtually admits that Marjorie Keck, who is Glenn Cupp's adjoining landowner to the east, owns to the general proximity of where Comparoni has surveyed the line, which places her true line far to the north of where Parsons surveyed it. It is perfectly logical that Parsons moved Russell Keck in the same mistaken amount to the south that he moved Marjorie Keck's line. Also, Fultz admitted that the Parsons survey left out any reference to the fence that corresponds to the fence that approximates the boundary as established by Comparoni. Fultz admitted that this was a troubling omission. Our review of the record *de novo* convinces us that the evidence does not preponderate agasinst the trial court's finding that the Comparoni survey correctly establishes the boundary line between Heath and Glenn Cupp and Marjorie Keck.

Heath also argues that the trial court erred in not finding that there was a binding boundary line agreement. For the law in support of his argument, Heath quotes the following from *Jack v. Dillehay*, 194 S.W.3d 441 (Tenn. Ct. App. 2005):

It is well settled that parties owning adjoining lands may by agreement establish a boundary line between their land where there is no certain and established line known to them. Such an agreement may be established by oral agreement and is not subject to the statute of frauds. In order to establish the existence of an oral boundary agreement, a party must prove that

> [t]he boundary line fixed by the [oral] agreement . . . [is] definite, certain, and clearly marked, and that it . . . [is] made by adjoining landowners with reference to the *uncertain or disputed* boundary line between their lands. . . . In order to enforce an oral agreement to establish the location of a boundary line, the parties must show: 1) a dispute or uncertainty as to the true location of the boundary line; 2) the agreement of the parties or their predecessors in interest as to the location of the boundary; 3) that the boundary line established by the oral agreement is definite and certain; and 4) possession and use of the property up to the agreed boundary by the parties or their predecessors in interest, or acquiescence in the boundary line.

> Once parties establish a boundary line pursuant to oral agreement, they and their successors are estopped from challenging the line, even if it is later discovered that the parties were mistaken as to the location of the line at the time of the agreement.

*Id*. at 447-48 (citations and internal quotation marks omitted; emphasis, omissions and brackets in original). As to the facts necessary to invoke the rule, Heath states,

> Ronnie Collins and Christine Keck knew of the two surveys of the fence line. Ronnie Collins and Christine Keck agreed to the location of the fence. Christine Keck, predecessor in title to ... Glenn Cupp, also relied upon the judgment of Bill Heath knowledge of the location of the line. Furthermore, Christine Keck requested that the [Heaths] share in the cost of maintaining

-13-

the fence in which the [Heaths] paid their half of the labor and
costs.

We disagree with Heath that the facts support the finding of a boundary line agreement. The trial court noted that this is a troubling case because of so much conflict in the testimony of decent, credible witnesses. The court ascribed the conflict to honest mistake and proceeded to resolve the conflict based upon the preponderance of the evidence. It is true that Ronnie Collins agreed that the sassafras tree as surveyed by Parsons established his boundary, but his sole basis for that belief was the Parsons survey. Further, Collins did not testify the Russell Keck, Cupp's predecessor, agreed to the corner. It is also true that one witness who did some logging on Christine Keck's property testified that Christine Keck told him to check with Heath for the location of the boundary line. However, that witness's testimony was contradicted by proof that Keck did not want to sell to Heath because of differences they had over the years, by the testimony of Fred Cupp that he tended the farm for Christine Keck and the boundary was as established by Comparoni, and by the testimony of Cardwell. Also, noticeably absent from Heath's testimony is any assertion that Christine Keck explicitly stated that she agreed to the line as surveyed by Parsons. In fact, the testimony of Fultz was to the effect that there had been some heated disagreements over the years as to the true boundary. There is no testimony to suggest that Marjorie Keck agreed to the Parsons survey; there is significant testimony that she did not agree to it. The evidence does not preponderate against the trial court's refusal to find a binding boundary line agreement to the line surveyed by Parsons.

At various places in their brief, the Heaths assert that strong evidence of their boundary, and of agreement by Cupp's predecessor Christine Keck, is payment by Virginia Heath of Fred Cupp for some fencing work and her reimbursement of Christine Keck for materials. However, we do not agree with Heath that the payment is as weighty as argued. Fred Cupp first denied being paid anything by Heath, but later recalled in rebuttal testimony that he was paid for patching some fence. The checks are for $36 to Fred Cupp and $21.25 to Christine Keck, hardly enough for a line fence. Moreover, Fred Cupp maintained that the patching was done on fence in the location of the line established by Comparoni.

Heath next argues that the trial court erred in not finding acquisition by adverse possession. Heath argues his possession has been exclusive, actual, adverse, continuous, open and notorious for twenty years. He relies on Tennessee Jurisprudence, Vol. 1, §§ 2-4 (Supp. 2010) for the elements of adverse possession. Heath is guilty in this argument of accounting only for the facts that are favorable to his position. That is not the correct analysis as the Plaintiffs point our in their brief. The question of whether a neighboring landowner has acquired title by adverse possession is a question of fact. *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). The party claiming by adverse possession has the

burden of proving his or her claim "by clear and convincing evidence." *Id*. The evidence of adverse possession is to be viewed critically with every reasonable presumption given in favor of the title owner. *Bone v. Loggins*, 652 S.W.2d 758, 760 (Tenn. Ct. App. 1982). Bill Heath admitted that he made no use of the Marjorie Keck property and that in fact she had it timbered after the Parsons survey and he took absolutely no action. The only testimony that he offered of making use of the property within Cupp's boundary line was, "[j]ust grow timber." Fultz testified that any flagging and marking done by Parsons had disappeared by the time he performed his work. Further, given the testimony of Fred Cupp and Cardwell, any use by Heath fell short of being "continuous" and "exclusive." In short, we hold that the trial court did not err in failing to find adverse possession by Heath.

Heath argues that the trial court erred in failing to accord a presumption of ownership based on payment of taxes on the disputed area for 20 years and nonpayment by the Plaintiffs for 20 years. Heath relies on Tenn. Code Ann. §§ 28-2-109 & 110(a)(2000). Those provisions, respectively, state:

> Any person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom such person claims have paid, the state and county taxes on the same for more then twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom such person claims have had, such person's deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for such period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of such land.

> Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

Heath argues that payment of taxes is an issue he addressed with the trial court and that the Plaintiffs did not even argue the point. Heath is not correct. Heath broached the

subject with Comparoni on cross-examination. Comparoni had researched the tax records as part of his work. He testified that Heath paid taxes on only 107 acres until 1990. In 1991, after the Parsons survey "expanded" his acreage, Heath paid taxes on 156 acres. Cupp's predecessor Christine Keck paid taxes on 118.5 acres consistently, before and after 1990, until 2007 when the taxed acreage fell to 81 acres. Comparoni addressed most of these facts, with the possible exception of dates, during his direct examination. Marjorie Keck paid taxes on 42.5 acres consistently, before and after 1990. Counsel for the Plaintiffs pointed out in his closing argument that the predecessor to Cupp paid taxes on the area in dispute until 2007.

The preponderance of the evidence is that both sides of this dispute paid taxes on the disputed property. Furthermore, the payment by Heath on increased acreage per the Parsons survey did not begin until 1991, less than 20 years before this action was filed. Therefore, there was no error in the failure to accord Heath a statutory presumption of ownership for payment of taxes and for the alleged non-payment by the Plaintiffs.

Heath's final argument is that the Plaintiffs admitted the counterclaim by not answering it. Therefore, so goes the argument, Heath wins. There is no merit in Heath's argument. The alleged counterclaim is contained in a document styled "ANSWER." The document has no separate or conspicuous heading showing that it also contains a counterclaim. After answering the numbered allegation in the Plaintiffs' complaint, the Heaths purport to assume the role of "Counter Plaintiffs" but all assertions that follow are phrased in terms of "affirmative defense[]." The Heaths did not pray for any relief other than "demand that the Complaint filed against them be dismissed with attorney fees. . . taxed to the Plaintiffs." The theories asserted by the Heaths were all tried on the merits and determined in favor of their adversaries. To the extent Heath stated a claim for relief in the "counterclaim" it was their obligation to bring the alleged default to the trial court's attention. See Tenn. R. Civ. P. 55.01. The trial court had no obligation to enter default sua sponte, without motion or notice to the Plaintiffs. *Id*. Heath does not even argue that such a motion was made. The failure to move the court for default resulted in a waiver of the Plaintiffs failure to answer the counterclaim. **Story v. Lanier**, 166 S.W.3d 167, 183 (Tenn. Ct. App. 2004). Thus, the trial court did not err in refusing to grant judgment against the Plaintiffs based on their alleged failure to answer a counterclaim.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, Bill Heath and wife Virginia Heath. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed below.

-16-

_____
CHARLES D. SUSANO, JR., JUDGE