IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 29, 2017 Session

## GEORGE HOLLOWELL v. DAVID PRATER, ET AL.

**Appeal from the Chancery Court for Carroll County**
**No. 01-CV-0076     Paul G. Summers, Senior Judge**

_____

**No. W2016-02259-COA-R3-CV**

_____

This case involves a boundary line dispute. The trial court adopted Appellee's surveyor's map and set the common boundary between the parties' property in accordance with the original grantors' intent to deed Appellants 25acres to have land that would allow their property to have access to the existing public road. Discerning no error, we affirm and remand.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Dwayne D. Maddox, III, Huntington, Tennessee, for the appellants, David Prater, Pamela Prater, and Carolyn P. Garlits.

Laura A. Keeton, Huntington, Tennessee, for the appellee, George Hollowell.

## OPINION

### I. Background

The disputed property consists of approximately 25 acres and is located in Carroll County, Tennessee. The property was once part of a larger parcel owned by D.B. Webb and his wife, Mary (the "Webb Property"). Following Mr. Webb's death, the Webb Property was divided between Mr. Webb's surviving children, Earl Webb and Rachel Hollowell. Rachel Hollowell is Appellee George Hollowell's mother. On Rachel

Hollowell's death, her portion of the Webb Property passed to her son, George Hollowell. On his death, Earl Webb's portion of the Webb Property passed to his surviving children, Juanita Hammett, Robert Earl Webb, and Helen Prater. On her death, Helen Prater's portion of the Webb Property passed to her children, David Prater, Bonita Bonnell, and Carolyn P. Garlits. Ms. Bonnell subsequently deeded her portion of the Webb Property to her sister, Carolyn P. Garlits. The instant dispute involves the boundary line between George Hollowell's property and David Prater's property.

Trial Exhibit 1 is a December 20, 1952 Warranty Deed transferring three tracts of the Webb Property to Rachel Hollowell (the "Rachel Hollowell Deed"). As is relevant to the instant appeal, the Rachel Hollowell Deed conveys "Tract No. 3 . . . containing by estimation 200 acres more or less . . ." to Ms. Hollowell. The Rachel Hollowell Deed contains a specific exclusion of approximately 25 acres from the 200 acre tract, to wit:

> However, included in this description but hereby expressly excluded is a tract of land herein described as follows: Beginning at a stake on the south west corner of the original Donaldson tract where an old road intersects said corner, thence in a north **east** direction with the center of old road to the Hollowell land, thence south with Hollowell land to the south line of the old Donaldson tract, thence west with the south line of the old Donaldson tract to the point of beginning, containing 25 acres more or less.

(Emphasis added). Trial Exhibit 3 is a December 20, 1952 Warranty Deed, conveying a portion of the Webb Property to Helen Prater, Juanita Hammett, and Robert Earl Webb (the "Prater Deed"). The Prater Deed conveys the disputed 25 acres as follows:

> Beginning at a stake on the south west corner of the original Donaldson tract where an old road intersects said corner, thence in a north **west** direction with the center of old road to the Hollowell land, thence south with Hollowell land to the south line of the old Donaldson tract, thence west with the south line of the old Donaldson tract to the point of beginning, containing 25 acres more or less.

(Emphasis added). As denoted by the emphases, the exclusionary deed's (i.e., the Rachel Hollowell Deed) description of the 25 acres and the granting deed's (i.e., the Prater Deed) description of the disputed 25 acres differ in that the exclusionary deed provides that the boundary line proceeds northeast along the center of an "old road," and the granting deed states that the line proceeds northwest along the center of the "old road." The foregoing descriptions were repeated in all subsequent deeds. All parties agree that the intent of their predecessors in title was to convey 25 acres to allow the Prater land to have access and frontage on the county road.

In 1977, a dispute arose between the Praters and an adjoining land owner, Paul Gentry, who is not a party to this lawsuit. Although the boundary line at issue between the Praters and Mr. Gentry is not the same line involved in this appeal, during the 1977 lawsuit, a survey was ordered. This survey was prepared by Lyndell Daniels and upheld the Praters' position concerning their boundary line with Mr. Gentry. As is relevant to this case, in the mid-1990s, the Praters filed a copy of the Daniels survey with the county registrar. Mr. Hollowell alleges that the filing of the Daniels survey divested him of approximately 30 acres. Specifically, he alleges that he had paid property taxes on 174 acres since he inherited that portion of the Webb Property from his mother in 1974. However, following entry of the Daniels survey, the acreage, on which Mr. Hollowell was charged taxes, was reduced to 144 acres, without any conveyance by Mr. Hollowell.

On May 10, 2001, Mr. Hollowell filed a complaint, seeking a determination as to the ownership of the disputed property and to quiet title. On October 16, 2002, Mr. Hollowell filed a motion to appoint an independent surveyor. This motion was granted by order of April 10, 2003, and Jim Cullivan, III was appointed as the independent surveyor. On April 4, 2006, Mr. Cullivan filed an opinion letter. Thereafter, Mr. Hollowell was granted leave to amend his complaint to allege that Appellants had not paid property taxes on the disputed tract for a period of more than 20 years. The case was heard on April 11, 2016. The court entered an initial order and then a clarification order. These two orders were consolidated into a Final Order of October 3, 2016. The court held that David Prater's outbuildings were located on approximately 2.5 acres of Mr. Hollowell's property. The trial court ordered entry of a corrected deed and ordered David Prater to pay Mr. Hollowell $2,000 ($800/acre) for the property.

## II. Issues

Appellants appeal and raise two issues as stated in their brief:

1. Whether the evidence adduced at trial preponderates against the trial court's findings as to the boundary line between the Hollowell tract and the Prater tract as intended by the makers of the original deeds?

2. Whether the trial court failed to give proper consideration to the opinion of the court-appointed special surveyor's opinion and testimony?

## III. Standard of Review

This Court has stated the applicable standard of review in boundary line dispute cases as follows:

This case was tried by the court without a jury. The general standard of review for bench trials applies to boundary disputes. *See Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980). Our review, therefore, is de novo upon the record of the proceedings below with a presumption of correctness as to the findings of fact of the trial court. *See* Tenn. R. App. P. 13(d); *Boarman v. Jaynes*, 109 S.W.3d 286, 289-90 (Tenn. 2003). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to de novo review with no presumption of correctness. *See Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

"In resolving a boundary line dispute, it is the role of the trier of fact to evaluate all the evidence and assess the credibility of the witnesses." *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999) (citing *Norman v. Hoyt*, 667 S.W.2d 88, 91 (Tenn. Ct. App. 1983)). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161 (Tenn. Ct. App. Mar. 31, 2008). Due to the fact-intensive nature of boundary line disputes, the trial court is best suited to assess the credibility of the witnesses and its credibility determinations are binding on this Court unless the evidence preponderates against them. *Id.* at *34. When the trial court makes a determination accepting one surveyor's findings over that of another, that same deference requires this court to accept the trial court's findings. *Id*.

As noted in the recent case of *Hong v. Foust*, No. E2011-00138-COA-R3-CV, 2012 WL 388448 (Tenn. Ct. App. Feb. 8, 2012), the following rule has been adopted in Tennessee:

> The construction of deed and other instruments and documents and their legal effect as to boundaries is a question of law. What boundaries the grant or deed refers to is a question of law; where those boundaries are on the face of the earth is a question of fact. If, therefore, the evidence concerning the location of the true boundary line between adjacent landowners is conflicting, that issue is one of fact unless the legal construction of the deed or grant is such that the boundary is determined as a matter of law.

*Id.* at *5 (citing 12 Am.Jur.2d Boundaries § 121 (1997) (footnotes omitted)) (emphasis added). Therefore, we review the trial court's finding as to the true location of the parties'[] common boundary line as a finding of fact that is entitled to the presumption of correctness. Tenn. R. App. P. 13(d).

Thus, we will not disturb the trial court's judgment unless the evidence preponderates against it. *Id*.

*Conder v. Salyers*, 421 S.W.3d 589, 592-93 (Tenn. Ct. App. 2013), *perm. app. denied* (Tenn. Oct. 17, 2013).

## IV. Analysis

### A. Consideration of Court-Appointed Surveyor's Testimony

We begin with Appellants' second issue concerning whether the trial court erred in relying more heavily on Appellee's expert land surveyor, Eddie Coleman, as opposed to the court-appointed surveyor, Mr. Cullivan. Mr. Cullivan's deposition was admitted as Trial Exhibit 18; however, he did not testify in person at the hearing. Furthermore, Mr. Cullivan, unlike Mr. Coleman, provided no independent survey of the disputed property. Rather, Mr. Cullivan relied on the Daniels survey. In his opinion letter, dated March 28, 2006 (and admitted as Trial Exhibit 5), Mr. Cullivan opines that "[t]he location, configuration and size of the subject tract should be as it is depicted (as Tract 3) on the survey plat produced by Lyndell Daniels dated October of 1977." In the first instance, the Daniels survey is the genesis of the instant dispute between these parties, and it was prepared for litigation between the Praters and Mr. Gentry. That litigation involved the Praters' western boundary line, which is not the subject of this lawsuit. In reviewing Mr. Cullivan's deposition, he did not undertake a survey of the property, and he did not inspect the land himself. However, as discussed in more detail below, Mr. Coleman testified in great detail about his research of the relevant deeds and his inspection of the property. Mr. Coleman also provided a physical survey based on what he gleaned from his research and work. To further complicate the matter, the deed descriptions, *supra*, call for the boundary line to run down the center line of an "old road"; however, there are two feasible roads on the property, either one of which could conceivably be the "old road." The first road, which is labeled the "Prater Homestead Road" on Trial Exhibit 7, runs northwest from Cavia Road directly to the Prater Homestead property. The second road (which Mr. Coleman labeled "Old Logging Road" on his survey, and Mr. Daniels labeled the "Old Dirt Road" on his survey) runs northeast to a corner that is not close to the Prater Homestead property and provides only minimal access to a public road. While Mr. Coleman spends a good deal of his testimony evaluating the metes and bounds descriptions against each road, Mr. Cullivan's opinion letter only refers to one road, i.e., the "old abandoned roadbed." Mr. Cullivan's omission of any discussion of the "Prater Homestead Road" in his analysis results in a less than thorough evaluation of the possible boundary lines.

As set out above, due to the fact-intensive nature of boundary line disputes, the trial court is best suited to assess the credibility of the witnesses, and its credibility determinations are binding on this Court unless the evidence preponderates against them.

*Phillips*, 2008 WL 836161, at \*34. When the trial court makes a determination accepting one surveyor's findings over that of another, that same deference requires this court to accept the trial court's findings. *Id*. In view of the fact that Mr. Coleman testified in great detail concerning his method for determining the boundary line, and Mr. Cullivan did not conduct a survey in this case, we cannot conclude that the trial court erred in accepting Mr. Coleman's survey in establishing the boundary line.

### B. Whether the Evidence Preponderates Against the Trial Court's Determination of the Common Boundary Line.

In its final order, the trial court made the following relevant findings concerning the disputed boundary line:

> The actual acreage contained in the parcels seems to change with every subsequent investigation. Because the initial descriptions were by estimation, the Court finds it difficult to define intent based on land size in the descriptions or size. However, the expression of a desire to carve out "25 acres more or less" is unambiguous. After careful review of the trial testimony, exhibits, deeds, and allied documents, the metes and bounds descriptions are conflicting and confusing and cannot be reconciled. The description of the "Hollowell land" is common to both deeds. There is Hollowell land on two sides of the Prater property, and either road could conceivably match the interpretation. The Court must divine the intent of the grantors by evaluation of the testimony, proof at the hearing, review of the record and the application of common sense.
>
> The proof by testimony was that the purpose and intent, according to all sources, of the 25 acre grant/exclusion was to provide the Prater homestead property with public road frontage acquired from the Hollowell land. Failure to grant the Praters access to a county road would have resulted in the Prater home property being land locked.
>
> The 25 acre granting/severance deed and exclusionary/severance deed calls for the center of an old road to be the boundary line of the 25 acre tract. The northwest road provides access to the Prater homestead property consistent with the grantors' desire to provide the Praters with access to a county road (now called "Cavia Road"). The use of the northwest road results in approximately 25 acres, while the use of northeast old logging road prescinds almost twice as much acreage. Parenthetically, the old logging road was not shown on a county map until the filing of the Daniels' survey in 19[7]7.
>
> The north property is referred to as "Prater Home Place." The northwest road to the old Prater homeplace shows signs of use consistent with the stated intent of the parties. It provides access from the otherwise land locked property to a county road. It was once graveled and has been

maintained in the past. In contrast, the old logging road shows very few signs of use; is marked with no trespassing signs; and is only negotiable via a four wheel drive vehicle or ATV.

The Court finds that the Plaintiff has proven, by a preponderance of the evidence, that the original intended home site was located north of the current Prater trailer rather than the Hollowell land in Decatur County reachable by the northeast "old logging road."

The Court finds the location of the old Prater homeplace north of the current Prater home location contrasted with the existence of a relatively indirect road "old logging road" to the northeast [of the] Hollowell property persuasive. The Court also heavily weighs the expressed intent of the prior land owners for a 25 acre grant, and the testimony of Plaintiff's expert witness, Surveyor Eddie Coleman, at trial. The Court finds that a common sense interpretation of the map compared to the stated and agreed intent of the parties all lead to the same conclusion. The Court finds the intent of the predecessors in title was to use the center of the northwest road as the dividing line between the Hollowell and the Prater Property.

Concerning the two feasible roads, Mr. Coleman testified that all of the involved surveyors "mutually agreed that we think that [it] was the intent of the conveyance of the 25 acres, that would provide access to the Prater property to a public road." He further explained that, in surveying the property, "we found two [possible roads]." Concerning why his survey placed the boundary line along the "Prater Homestead Road," Mr. Coleman testified, in relevant part, as follows:

> The road that I'm calling the old Prater home[stead] road . . . left the blacktop road, Cavia Road, and went directly into the [Prater] home site. And I also surveyed behind Mr. Lyndell Daniels . . . so that I would have knowledge of both roads so that I could see where they lay, how long they were, how many acres they would constitute, where they began, where they terminated, and so I [showed] both of them on my plat. And then I began to try to see the 25-acre exclusion on Mr. Hollowell's deed, the 25-acre conveyance on all three of the Prater deeds, if we could find which [road] came near to being 25 acres.
> On Mr. Daniels' deed, he had already publicized on his deed that he knew that this road exceeded the 25 acres. He called for it to be 44.71 acres. In doing my survey of the old Prater home[stead] place road, I found basically 25 acres.

Mr. Coleman was then asked to explain why his survey did not set the disputed boundary line along the northeast road, i.e., the "Old Logging Road" or "Old Dirt Road," and he testified, in relevant part, that:

- 7 -

If you use the logging dirt road on my survey, [the Praters] would have 150-foot [sic] of adjoining public road footage. If you use the road that I prefer, the old Prater home[stead] road, [the Praters] would have an additional 750 foot of public road frontage. So, my road would give the Praters the additional 750 plus 150 that they already have . . . . That's the entire part of the 25-acre severance, that it would give them that additional footage.

Mr. Coleman's testimony preponderates in favor of the trial court's determination of the common boundary line. Furthermore, from our review of the competing surveys and deed descriptions, it appears that, if (as Appellants argue) the boundary line were to be set along the old logging road, which runs northeast, the directional calls set out in the Prater Deed would each have to be reversed. Furthermore, the setting of the boundary line along the old logging road would result in the Praters receiving almost twice the acreage, i.e., 44.71 acres, than any of the deeds, exclusionary or conveying, contemplate.

### V. Conclusion

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellants, David Prater, Pamela Prater, Carolyn P. Garlits, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE